UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

ROBERT A. REYNOLDS                                             PLAINTIFF

v.                                          CIVIL ACTION NO. 1:11CV-P142-M

ELIZABETH *et al.*                                       DEFENDANTS

<u>MEMORANDUM OPINION</u>

This matter is before the Court on initial review of the *pro se* complaint (DN 1) and supplement (DN 6) pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, a portion of the claims will be dismissed and the others will continue.

I.

Plaintiff Robert A. Reynolds is currently a convicted federal inmate incarcerated at U.S.P. McCreary. The allegations in his complaint concern denied medical treatment while incarcerated as a federal pretrial detainee in the Warren County Jail (WCJ). As Defendants, he names "Elizabeth (Southern Health Partners)," a nurse practitioner at the WCJ; "Joanna (Southern Health Partners)," a health administrator at WCJ; Jackie Strode, WCJ Jailer; Gayle, a jail administrator at WCJ; and U.S. Marshal William Etheridge of the U.S. Marshals Service (USMS) in Nashville, Tennessee. He sues each Defendant in his or her individual and official capacities.

Plaintiff reports that during the time of the alleged wrongdoing described in his complaint, he was a pretrial detainee for the USMS in Nashville, Tennessee, being detained in the WCJ. On October 10, 2010, he was involved in an altercation with two other inmates (a federal inmate and a county or state inmate) and sustained an injury to his right side. He

assumed he had broken his ribs given "the extreme pain, hard time breathing, [and] any movement was excruciating."

Plaintiff reports being "immediately taken to the medical unit" in the jail, where Jennifer, a nurse, said that he was sore and would be fine. He states that he was then taken to the segregation unit for administrative or disciplinary reasons and given "3 Advil (200mg. each)." He alleges that he had a serious medical need that was ignored. He reports filing a medical request everyday for four days and finally being seen by Defendant Nurse Practitioner Elizabeth, who evaluated him by listening to his breathing and performing a visual examination of his ribs. Defendant Elizabeth determined that Plaintiff "was fine" and "just sore" and prescribed Tylenol, two times daily for three days.

Plaintiff reports being placed back into maximum security cell A-8, where the altercation occurred, and filing a medical request and/or grievance almost everyday. After about ten days, he was called to the medical department by Defendant Joanna to discuss his requests. Plaintiff claims that "she responded with a arrogant, hateful attitude. telling me my ribs were not broken. I was merely sore." He advised her that he knew his body, was having trouble breathing, was unable to move around, was unable to sleep, and was in "serious pain." Plaintiff asked Defendant Joanna how she knew his ribs were not broken, and "[h]er response was how do you think they did it in the old days . . . and then threatened me with the 'hole' (segregation) for so much paper work."

Plaintiff decided to call his attorney with the Nashville Public Defenders Office. After Plaintiff explained to his counsel what happened and what was not being done, his counsel contacted Defendant Etheridge of the USMS in Nashville, who contacted the WCJ about

Plaintiff's medical needs not being met. The WCJ replied that Plaintiff had been seen, that nothing was wrong, and that he was merely sore. Plaintiff states that his counsel received an email from the USMS with the WCJ's response and "left it at that. Totally agreeing with their medical assessment without finding if their facts were even correct." In the description of his claim, Plaintiff states that this exchange occurred ten to twelve days after the incident, but an attached email between Plaintiff's public defender and Defendant Etheridge is dated October 14, 2010, only four days after the incident.

      Plaintiff continued daily to file medical requests and inmate grievances. On about the fourteenth day, Plaintiff was called to the medical department, where Defendant Joanna was present with someone contracted with WCJ to perform x-rays. X-rays were performed, and three days later, Plaintiff was informed by "a medical tech. nurse named Kimber" that he had two fractured ribs. Despite the findings, he reports that he still received no medical attention, including no pain medication. Thereafter, for 30 days, he filed medical requests and grievances.

      To deal with the pain while incarcerated at the WCJ, Plaintiff reports faking a shoulder injury. To his surprise, there was no hassle, and he was given ten days worth of Advil. After those ten days, he faked a toothache and received ten more days of Advil for pain.

      Plaintiff states that it has been months since his injury and that his ribs still hurt; he has trouble breathing in deep; and he cannot lie on his right side or participate in physical activity. X-rays taken at USP McCreary, his current place of incarceration, were abnormal and showed a "poorly healing right sided 9th and 10th rib fx" and an "Old 9th right rib fracture non-union."

      Plaintiff alleges that his right to proper medical care was violated by Defendants Joanna and Elizabeth from October 10, 2010, until April 2011; that his right to be properly treated was

violated by Defendant Etheridge; that he was denied any assistance through the grievance procedure by Defendants Strode and Gayle; and that all five Defendants violated his "right to proper medical attention, cruel and unusual punishment, refusal to treat a serious medical need 'broken bones,' deliberate indifference." Plaintiff also alleges medical malpractice, and in alleging that Defendant Joanna threatened him with segregation for filing so much paperwork in the form of medical requests and grievances, the Court also construes the complaint as alleging a retaliation claim.

As relief, Plaintiff seeks monetary and punitive damages.

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore*, 114 F.3d at 604.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

5

### III.

**A.** **Federal claims**

    **1. 42 U.S.C. § 1983**

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two allegations are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). First, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States," *West v. Atkins*, 487 U.S. 42, 48 (1988), and second, he "must show that the alleged deprivation was committed by a person acting under color of state law." *Id.* "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

    **a. Official-capacity claims**

        **i. WCJ Defendants**

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Plaintiff's official-capacity claims against Defendants Strode and Gayle, therefore, are actually against Warren County. *See Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so,

whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will address the issues in reverse order.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

In the instant case, none of the allegations in the complaint or its supplement demonstrate that any alleged wrongdoing occurred as a result of a policy or custom implemented or endorsed by Warren County. Accordingly, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim.

Consequently, the official-capacity claims against Defendants Strode and Gayle must be dismissed.

### ii. SHP Defendants

The official-capacity claims against Defendants Joanna and Elizabeth are actually against their employer, SHP. This same municipal-liability analysis applies to § 1983 claims against a

private corporation like SHP.[1] *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). Liability must be based on a policy or custom of the contracted private entity or "the inadequacy of [an employee's] training." *Id.*; *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights.").

In the instant case, Plaintiff has not alleged that SHP's medical staff acted pursuant to a policy or custom in causing any alleged harm. Nothing in the complaint or its supplement demonstrates that the action or inaction of any medical personnel occurred as a result of a policy or custom implemented or endorsed by SHP. The complaint, therefore, fails to establish a basis of liability against SHP and, therefore, fails to state a cognizable § 1983 claim against its employees, Defendants Joanna and Elizabeth, in their official capacities.

### b. Individual-capacity claims

#### i. WCJ Defendants

At the outset, the Court mentions that Plaintiff was not a convicted prisoner at the time of the events alleged; he was a pretrial detainee. As such, the Eighth Amendment's proscription against cruel and unusual punishment does not apply to him. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). "Under the Fourteenth Amendment Due Process Clause,

---

[1]The Sixth Circuit has held that "[i]t is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). SHP has apparently contracted with the WCJ to provide medical services to the inmates. Thus, on initial review of the complaint, the Court presumes that SHP is a state actor.

however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Id.* at 685-86. Thus, "[t]o sustain a cause of action under § 1983 for failure to provide medical treatment, plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" *Id.* at 686; *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).

A viable Eighth Amendment claim must satisfy both an objective component and a subjective component. *Farmer v. Brennan*, 511 U.S. at 834; *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The objective component requires that the deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Hudson v. McMillian*, 503 U.S. 1 (1992). An inmate must show that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety. *Wilson v. Seiter*, 501 U.S. at 302-03. "'[A]cting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Street*, 102 F.3d at 815 (quoting *Farmer*, 511 U.S. at 836).

Although Plaintiff claims that Jailer Strode and Jail Administrator Gayle denied him proper medical care, that claim is a conclusory legal determination which is not to be taken as true, and the facts asserted by Plaintiff in his complaint and supplement do not support such a claim. *Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint . . . to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings."). He does not

indicate that either Strode or Gayle was involved in any way in providing him with medical treatment, only that they were involved in the grievance process, which does not subject them to liability under § 1983.

There is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Thus, where the only allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged denial of medical treatment.

To the extent Plaintiff seeks to hold Defendant Strode liable based on his position as WCJ Jailer, the doctrine of respondeat superior, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995). Rather, to establish supervisory liability in a § 1983 action, "[t]here must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "[L]iability of supervisory personnel must be based on more than merely the right to control employees." *Hays v. Jefferson County, Ky.*, 668 F.2d at 872. "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee*, 199 F.3d at 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Here, Plaintiff fails to demonstrate any facts showing that Defendant Strode encouraged any specific incidents or implicitly authorized, approved or knowingly acquiesced to any unconstitutional conduct.

For these reasons, the individual-capacity claims against Defendants Strode and Gayle fail to state a claim upon which relief may be granted.

### ii. SHP Defendants

#### aa. denial of medical treatment

Because Plaintiff alleges a continued refusal by Defendants Joanna and Elizabeth to provide treatment for a rib injury from October 2010 to April 2011, the Court will allow the claims of deliberate indifference to a serious medical need to proceed against those Defendants in their individual capacities.

#### bb. retaliation

Plaintiff alleges that Defendant Joanna threatened him with the "hole"/segregation for filing so much "paperwork." In construing the facts in a light most favorable to Plaintiff, the Court presumes that the "paperwork" is medical requests and grievances. The Court will allow this retaliation claim to continue against Defendant Joanna in her individual capacity.

### 2. *Bivens*

Because Defendant Etheridge is a federal (not a state) actor, § 1983 does not apply to him. In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), however, the U.S. Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). "Such claims are the counterpart to suits under 42 U.S.C. § 1983 against state officials who infringe plaintiffs' federal constitutional or statutory rights," *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698 (6th Cir. 1996), and decisional law developed under § 1983 has been fully applied to *Bivens*-type suits. *Butz v. Economou*, 438 U.S. 478, 498-504 (1978).

The Court construes the § 1983 claims against federal Defendant Etheridge as being brought under *Bivens*. Because "a *Bivens* claim may not be asserted against a federal officer in

his official capacity," *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991), the Court will dismiss the official-capacity claims against Defendant Etheridge.

As to the individual-capacity claim against that Defendant, the allegations in the complaint demonstrate that upon being notified of Plaintiff's rib problem, Defendant Etheridge immediately sought information about his condition from the WCJ medical staff and then relayed that information back to Plaintiff's attorney. Defendant U.S. Marshal Etheridge is not a medical professional, and given that Defendant Etheridge was located in Nashville during Plaintiff's incarceration at WCJ, he had no day-to-day contact with Plaintiff and no direct involvement in his medical treatment. Plaintiff fails to show that Defendant Etheridge, a non-medical professional who inquired of Plaintiff's condition from medical personnel, was deliberately indifferent to a serious medical need. *See Harrison v. Ash*, 539 F.3d 510, 518-20 (6th Cir. 2008) (finding that non-medical prison employees were not deliberately indifferent to plaintiff's medical needs for not responding to medical complaints from a prisoner who was already under the care of the medical professionals); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). The individual-capacity claims will be dismissed.

**B.     State-law claim**

Plaintiff alleges a state-law, medical-malpractice claim. The Court will allow that claim to continue against Defendants Joanna and Elizabeth.

## IV.  ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the official-capacity and individual-capacity claims against Defendants Jackie Strode, Gayle, and William Etheridge and the official-capacity claims against Defendants Joanna and Elizabeth are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that the following claims will proceed:  (1) the claims of deliberate indifference to a serious medical need against Defendants Joanna and Elizabeth in their individual capacities; (2) the retaliation claim against Defendant Joanna in her individual capacity; and (3) the medical-malpractice claim against Defendants Joanna and Elizabeth.

The Court will enter a separate Scheduling Order governing the development of the continuing claims.

Date:


cc:     Plaintiff, *pro se*
        Defendants
        Warren County Attorney
        United States Attorney
4414.005