UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**ROBERT A. REYNOLDS**                                                              **PLAINTIFF**

**v.**                                                      **CIVIL ACTION NO. 1:11CV-P142-M**

**ELIZABETH** *et al.*                                                           **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Defendants Elizabeth Walkup, APRN, Joanna Thomas, RN, and John Adams, M.D., by counsel, filed a renewed motion for summary judgment pursuant to Fed. R. Civ. P. 56 (DN 157). Plaintiff Robert A. Reynolds filed a *pro se* response (DN 159), incorporating by reference his response (DN 136), including exhibits, to a previously filed motion for summary judgment. Defendants did not file a reply. For the reasons that follow, the motion for summary judgment will be granted in part and denied in part.

**I.   STATEMENT OF CLAIMS AND PROCEDURAL HISTORY**

During the time of the alleged wrongdoing described in the complaint, Plaintiff was a pretrial detainee for the United States Marshals Service in Nashville, Tennessee, being detained in the Warren County Jail (WCJ). According to the verified complaint (DN 1), on October 11, 2010, Plaintiff was involved in an altercation with two other inmates (a federal inmate and a county or state inmate) and sustained an injury to his right side. He assumed he had broken his ribs given "the extreme pain, hard time breathing, [and] any movement was excruciating." Plaintiff reported being "immediately taken to the medical unit" in the jail, where non-defendant Nurse Jennifer said that he was sore and would be fine. He stated that he was then taken to the segregation unit for administrative or disciplinary reasons and given "3 Advil (200mg. each)." He alleged that he had a serious medical need that was ignored. He reported filing a medical

request everyday for four days and finally being seen by Defendant Nurse Practitioner Walkup, who evaluated him by listening to his breathing and performing a visual examination of his ribs. Defendant Elizabeth determined that Plaintiff "was fine" and "just sore" and prescribed Tylenol, two times daily for three days.

Plaintiff reported being placed back into maximum security cell A-8, where the altercation occurred, and filing a medical request and/or grievance almost everyday. After about ten days, he was called to the medical department by Defendant Nurse Thomas to discuss his requests. Plaintiff claimed that "she responded with a arrogant, hateful attitude. telling me my ribs were not broken. I was merely sore." He advised her that he knew his body, was having trouble breathing, was unable to move around, was unable to sleep, and was in "serious pain." Plaintiff asked Defendant Thomas how she knew his ribs were not broken, and "[h]er response was how do you think they did it in the old days . . . and then threatened me with the 'hole' (segregation) for so much paper work."

Plaintiff decided to call his attorney with the Nashville Public Defenders Office. After Plaintiff explained to his counsel what happened and what was not being done, his counsel contacted Defendant Etheridge of the USMS in Nashville, who contacted the WCJ about Plaintiff's medical needs not being met. The WCJ replied that Plaintiff had been seen, that nothing was wrong, and that he was merely sore. Plaintiff stated that his counsel received an email from the USMS with the WCJ's response and "left it at that. Totally agreeing with their medical assessment without finding if their facts were even correct." In the description of his claim, Plaintiff stated that this exchange occurred ten to twelve days after the incident, but an attached email between Plaintiff's public defender and Defendant Etheridge is dated October 14, 2010, only three days after the incident.

Plaintiff reported continuing to file medical requests and inmate grievances on a daily basis. On about the fourteenth day, Plaintiff was called to the medical department, where Defendant Thomas was present with someone contracted with WCJ to perform x-rays. X-rays were performed, and three days later, Plaintiff was informed by "a medical tech. nurse named Kimber" that he had two fractured ribs. Despite the findings, he reported that he still received no medical attention, including no pain medication. Thereafter, for 30 days, he filed medical requests and grievances.

To deal with the pain while incarcerated at the WCJ, Plaintiff reported faking a shoulder injury. To his surprise, there was no hassle, and he was given ten days worth of Advil. After those ten days, he faked a toothache and received ten more days of Advil for pain.

In the complaint and a supplement thereto (DN 6), Plaintiff reported that it had been months since his injury and that his ribs still hurt; he had trouble breathing in deep; and he could not lie on his right side or participate in physical activity. X-rays taken in July and August 2011 at USP McCreary, where Plaintiff was incarcerated at the time he filed his complaint, were abnormal and showed a "poorly healing right sided 9th and 10th rib fx" and an "Old 9th right rib fracture non-union."[1]

Plaintiff alleged that his right to proper medical care was violated by Defendants Thomas and Walkup from October 11, 2010, until April 2011, and also alleged medical malpractice.

As relief, Plaintiff sought monetary and punitive damages.

---

[1] Plaintiff's supplement (DN 6) to the complaint contains a copy of these x-rays dated July 7, 2011, and August 17, 2011. During an examination by a nurse at USP McCreary on July 19, 2011, Plaintiff complained that he was "continuing to have pain in the area it's usually just aggravating during the day but [a]t night it's worse when I'm lying down." Plaintiff received orders for ibuprofen and a rib belt. On follow up on July 29, 2011, Plaintiff asked for "a low bunk because of his persistent rib pain" and complained that he continued "to be unable to lie on the right side." He was prescribed ibuprofen 600 mg tablets to be taken twice daily with food for 180 days and given a low bunk permit for six months due to poor healing rib fractures.

On initial review of the complaint and supplement pursuant to 28 U.S.C. § 1915A, the Court allowed three claims to continue (DN 12).  First, because Plaintiff alleged a continued refusal by Defendant Nurses Joanna Thomas and Elizabeth Walkup to provide treatment for a rib injury, the Court allowed the 42 U.S.C. § 1983 claims of deliberate indifference to a serious medical need to proceed against those Defendants in their individual capacities.  Second, because Plaintiff alleged that Defendant Thomas threatened him with the "hole"/segregation for filing so much "paperwork," the Court allowed the § 1983 retaliation claim to continue against Defendant Thomas in her individual capacity.  Finally, the Court allowed a state-law medical-malpractice claim to proceed against Defendants Thomas and Walkup.

Thereafter, the Court granted (DN 76) Plaintiff's motion to amend the complaint to add Dr. John Adams (DN 54) to the medical claims since he directly oversaw Plaintiff's medical treatment.  To his motion to amend, Plaintiff attached WCRJ medical records signed by Defendant Dr. Adams as "Attending Physician."  Plaintiff claimed that the documents "prove Dr. John Adams is as much responsible for the plaintiffs claims" as Defendants Thomas and Walkup.

By Memorandum Opinion and Order entered September 5, 2014 (DN 149), the Court granted Plaintiff's request to dismiss the retaliation claim against Defendant Joanna Thomas.  Consequently, the remaining claims before the Court are Plaintiff's Fourteenth Amendment claim of deliberate indifference to a serious medical need and his state-law medical malpractice claim.

## II. SUMMARY-JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which he or she has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id*. If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990). The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id*. (internal quotation marks omitted).

### III. ANALYSIS

#### A. Medical Malpractice Claim

Plaintiff asserts a claim of medical malpractice against Defendants Walkup, Thomas, and Dr. Adams. Defendants seek summary judgment on this claim arguing that Plaintiff has failed to

disclose or produce any competent and qualified expert witness critical of the care provided in this case and therefore cannot establish a prima facie case of medical malpractice. Plaintiff responds that he has tried to obtain an expert witness, even asking the Court for appointment of an expert, to no avail.

Under Kentucky law, "[e]xcept in limited factual circumstances, . . . the plaintiff in a medical negligence case is required to present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006). "Kentucky consistently recognizes two exceptions to the expert witness rule in medical malpractices cases." *Id.* (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992)). "Both exceptions involve the application of the *res ipsa loquitur* doctrine and permit the inference of negligence even in the absence of expert testimony." *Id.*

> One exception involves a situation in which "'any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care'; illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy. The second occurs when 'medical experts may provide a sufficient foundation for *res ipsa loquitur* on more complex matters.'" An example of the second exception would be the case in which the defendant doctor makes admissions of a technical character from which one could infer that he or she acted negligently.

*White v. Norton Healthcare, Inc.*, 435 S.W.3d 68, 76-77 (Ky. Ct. App. 2014) (quoting *Andrew v. Begley*, 203 S.W.3d at 170-71) (internal citations omitted).

Defendants argue that neither exception applies to the expert witness requirement. As to the first exception, they assert that whether their evaluation of Plaintiff's chest for fractured ribs was proper, and in accordance with accepted standards of medical care, is beyond the everyday knowledge of laypersons. The Court agrees.

As to the second exception, in their motion for summary judgment, Defendants assert that no Defendant has admitted, nor will admit, that his or her actions gave rise to negligence. In his response, Plaintiff cites to various exhibits (such as the incident report of the assault, WCJ medical records, pictures, emails, among other documents) seemingly in support of a contention that one or both exceptions apply to his case. None of the exhibits, however, establish a clear inference of Defendants' negligence in this case or contain any admissions of a technical character by any Defendant or other treating physician from which negligence or causation could be inferred. For these reasons, the Court finds that the second exception to the need for expert testimony does not apply in this case.

Because Plaintiff failed to produce an expert witness in support of his medical malpractice claim, Plaintiff has failed to create a genuine dispute of material fact as to Defendants' duty of care and breach thereof. Defendants, therefore, are entitled to summary judgment on this issue.

### B. *Fourteenth Amendment Claim*

At the outset, the Court mentions that Plaintiff was not a convicted prisoner at the time of the events alleged; he was a pretrial detainee. As such, the Eighth Amendment's proscription against cruel and unusual punishment does not apply to him. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). "Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Id.* at 685-86. Thus, "[t]o sustain a cause of action under § 1983 for failure to provide medical treatment, plaintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" *Id.* at 686; *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).

In his verified complaint (DN 1), Plaintiff alleges that Defendants were deliberately indifferent to a serious medical need by denying him adequate treatment for two broken ribs. In their motion for summary judgment, Defendants claim that Plaintiff fails "to present sufficient evidence to support his claim for deliberate indifference to a medical need." They argue:

> In the present case, Mr. Reynolds was evaluated, treated, and given medication on at least three occasions within a two week span and all three qualified medical personnel evaluated Mr. Reynolds with sore ribs. Mr. Reynolds now claims an x-ray at a different facility showed a poorly healed broken rib. This is hardly a scenario that gives rise to a constitutional claim for deliberate indifference to a medical need. Mr. Reynolds unequivocally fails to meet the burden of showing the requisite culpable state of mind and the objective harm necessary to establish a constitutional claim for deliberate indifference and his claim should therefore be dismissed with prejudice.

Defendants, however, attach no medical records, or any other documentation, to their motion for summary judgment in support of their assertions and argument.

Further, Defendants reference only Plaintiff's complaint in detailing the limited facts that they do provide in their motion. To the extent that Defendants' recitation of the facts are solely from Plaintiff's complaint, Defendants' version of some of the facts is inaccurate.[2] Other assertions in Defendants' factual recitation are not contained in Plaintiff's complaint and could only be considered in support of a motion for summary judgment if made by the Defendants themselves in sworn statements.[3] In addition, Defendants wholly fail to address Plaintiff's claim

---

[2] For instance, the date Defendants give for the alleged assault resulting in the rib injury is wrong as is their statement that "[o]n or about the fourteenth day, Mr. Reynolds alleges that x-rays taken at USP McCreary, a subsequent prison where Mr. Reynolds was detained, showed a poorly healing right sided 9th and 10th rib fracture." The complaint and supplement, instead, indicate that Plaintiff was still at the Warren County Jail fourteen days after his rib injury and that x-rays at USP-McCreary were not taken until the next year in July and August 2011.

[3] Examples of such assertions are: (1) "Defendant Walkup was an employee of Dr. Adams and, as a licensed nurse practitioner, was allowed to practice medicine independently within her scope of practice in the state of Kentucky. She never consulted with Dr. Adams regarding Plaintiff's injuries, nor was Dr. Adams contacted by anyone else at the jail regarding Mr. Reynolds"; and (2) "Ms. Thomas is not an employee of Dr. Adams and did not contact him regarding Mr. Reynolds."

8

that he was repeatedly denied pain medication for his rib injury.[4]  Finally, Defendants discuss the Kentucky summary-judgment standard and rely primarily on Kentucky appellate law instead of federal law in support of their argument that Plaintiff fails to establish a constitutional claim of deliberate indifference to a serious medical need.

A party asserting that a fact cannot be genuinely disputed "must support the assertion by[] citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).  Moreover, "at summary judgment, parties must submit evidence that would be admissible at trial." *Lee v. EquiFirst Corp.*, No. 3:10-cv-809, 2011 WL 1584124, at *5 (M.D. Tenn. Apr. 25, 2011).

The Court concludes that Defendants have not properly supported their motion for summary judgment as to the Fourteenth Amendment claim of deliberate indifference to a serious medical need and, therefore, will deny the motion without prejudice.

## IV.  ORDER

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motion for summary judgment (DN 157) is **GRANTED with respect to Plaintiff's medical malpractice claim**.  Defendants Walkup, Thomas, and Dr. Adams are entitled to judgment as a matter of law on that state-law claim.

---

[4] In the complaint, Plaintiff reports "extreme pain" and that "I can't move around, I can't sleep, I can't eat." He further stated that even after the x-rays showed that he had two broken bones, "I was still refused medical attention.  I continued for 30 days filing medical request and grievances.  My attorney had his private investigator [] come to Bowling Green and ask me about my injury . . . ."  He stated that to deal with the pain, he was "forced to fake a shoulder injury in the form of a medical request, seeking pain meds," and he was given ten days of Advil with no hassle.  Then, asserted Plaintiff, he faked a toothache and received ten more days of Advil.

      **IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (DN 157) is **DENIED with respect to Plaintiff's Fourteenth Amendment claim of deliberate indifference to a serious medical need.  The motion is denied without prejudice to filing a properly supported motion for summary judgment**.

      **IT IS THEREFORE ORDERED** that within **30 days** of entry of this Memorandum Opinion and Order, Defendants must file a properly supported motion for summary judgment in accordance with Fed. R. Civ. P. 56.  Plaintiff must file a response within **21 days** from service of Defendants' motion.  Failure to do so will result in consideration of the motion without benefit of a response from Plaintiff.  Defendants may file a reply within **14 days** of service of Plaintiff's response.

      In Plaintiff's response to the current motion for summary judgment, Plaintiff incorporated by reference his response (DN 136) to an earlier filed dispositive motion.  Should Defendants file a properly supported motion for summary judgment, **<u>Plaintiff must file a new response addressing Defendants' arguments raised in their new motion</u>**.  **The Clerk of Court is DIRECTED to send Plaintiff a copy of his earlier response (DN 136) along with the exhibits attached thereto for his reference**.

      The Court provides Plaintiff with the following guidance in responding to a motion for summary judgment under Fed. R. Civ. P. 56.  *See United States v. Ninety-Three Firearms*, 330 F.3d 414, 427 (6th Cir. 2003).  The Court advises Plaintiff that, in order for him to defeat Defendants' motion for summary judgment, he must demonstrate a genuine issue of material fact for trial and must support this assertion by citing to facts that can be presented in a form that would be admissible in evidence.  *See* Fed. R. Civ. P. 56(c).  Plaintiff must support his facts with affidavits (sworn witness statements) and/or other documents contradicting the material facts

10

asserted by Defendants.  Otherwise, the Court may accept Defendants' facts as true and grant judgment in favor of Defendants without a trial.  The full text of Rule 56 (the summary-judgment rule) is attached to this Order.

Date:  September 29, 2015

                                                   **Joseph H. McKinley, Jr., Chief Judge**
                                                   **United States District Court**

cc:       Plaintiff, *pro se*
           Counsel of record
4414.005

## FEDERAL RULE OF CIVIL PROCEDURE 56—SUMMARY JUDGMENT

**(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

**(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

**(c) Procedures.**

**(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**(2)** *Objection That a Fact Is Not Supported by Admissible Evidence*. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

**(3)** *Materials Not Cited*. The court need consider only the cited materials, but it may consider other materials in the record.

**(4)** *Affidavits or Declarations*. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

**(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

   **(1)** defer considering the motion or deny it;

   **(2)** allow time to obtain affidavits or declarations or to take discovery; or

   **(3)** issue any other appropriate order.

**(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

   **(1)** give an opportunity to properly support or address the fact;

   **(2)** consider the fact undisputed for purposes of the motion;

   **(3)** grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

   **(4)** issue any other appropriate order.

**(f) Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:

   **(1)** grant summary judgment for a nonmovant;

   **(2)** grant the motion on grounds not raised by a party; or

   **(3)** consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

2

**(g) Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

**(h) Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court--after notice and a reasonable time to respond--may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.