UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**ROBERT A. REYNOLDS**                                                   **PLAINTIFF**

v.                                                      **CIVIL ACTION NO. 1:11-CV-P142-JHM**

**ELIZABETH** *et al.*                                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a renewed motion by Defendants for summary judgment (DN 166) and Defendants' motion to strike Plaintiff's sur-reply (DN 170). Fully briefed, these matters are ripe for decision. For the following reasons, Defendants' motion to strike Plaintiff's sur-reply will be denied and Defendants' motion for summary judgment will be granted.

    **I.**       **PROCEDURAL HISTORY**

*Pro se* Plaintiff Robert A. Reynolds, proceeding *in forma pauperis*, filed a complaint against five Defendants on September 12, 2011. On April 24, 2012, the Court conducted an initial screening of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and allowed three claims to proceed: (1) Plaintiff's claim of deliberate indifference to a serious medical need against Defendant Elizabeth Walkup, APRN, and Joanna Thomas, RN, in their individual capacities, for failing to provide treatment for a rib injury; (2) his retaliation claim against Defendant Thomas in her individual capacity for threatening Plaintiff with the "hole" for filing so much paperwork; and (3) a medical malpractice claim against Defendants Walkup and Thomas. On April 8, 2013, the Court allowed Plaintiff to amend his complaint to add Dr. John Adams as a Defendant since Plaintiff alleged that he oversaw Plaintiff's medical treatment. On September 5, 2014, the Court entered a Memorandum and Order allowing Plaintiff to withdraw his retaliation claim against

Defendant Thomas. Then, on September 30, 2015, the Court entered a Memorandum Opinion and Order in which it granted Defendants' motion for summary judgment with respect to Plaintiff's medical malpractice claim and denied Defendants' motion for summary judgment with respect to Plaintiff's deliberate indifference claim without prejudice to filing a properly supported motion. It is Defendants' renewed motion for summary judgment on Plaintiff's remaining deliberate indifference claim against Defendants Walkup, Thomas, and Adams that is now before the Court.

## II.  MOTION TO STRIKE PLAINTIFF'S SUR-REPLY

Prior to considering the motion for summary judgment, the Court must first resolve Defendants' motion strike Plaintiff's sur-reply (DN 170). In their brief, Defendants argue that Plaintiff's sur-reply should be stricken from the record because Plaintiff did not file a motion for leave to file a sur-reply and because the Local Rules for the Western District of Kentucky do not permit the filing of a sur-reply. Although Defendants' arguments are well-taken, in light of the less stringent standard to which the Court holds an individual who proceeds *pro se*, the Court will consider the arguments raised in Plaintiff's sur-reply. *See Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014) ("Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances . . . ."); *see also Simpson v. Bredeson*, No. 2:10-cv-02950-JPM-tmp, 2015 U.S. Dist. LEXIS 128271, at *12 (W.D. Tenn. Sept. 24, 2015); *Wilson v. United States*, 3:09-CV-42, 2010 U.S. Dist. LEXIS 28727, at *1 n.2 (E.D. Tenn. Mar. 25, 2010) (accepting *pro se* plaintiff's sur-reply even though filed without leave of court). For these reasons, the Court will deny Defendants' motion to strike Plaintiff's sur-reply.

### III. DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

#### A. FACTS

On October 11, 2010, Plaintiff was a federal pre-trial detainee being held at the Warren County Jail (WCJ) when he was involved in an altercation with other inmates. The WCJ incident report from that date indicates that deputies found Plaintiff "lying on the floor" and that "medical was called" to look at him. His medical progress notes from that date show that Plaintiff had "multiple contusions to head, abdomen, back, and arms, . . . [and] a bleeding cuticle." The notes further show that Plaintiff was given one dose of 600 mg "IBU" and an ice-pack for contusions by a non-party nurse.

The evidence then shows that Plaintiff completed a medical request form on October 12, 2010, in which he stated: "ATTN: EMERGENCY . . . I got into an altercation on the 11th of Oct. and I was kicked in my ribs on the left side. I am in extreme pain. I can feel my [illegible] rub together. Its hard to breath. Its extremely painful to even move. Please I am . . . [illegible] it's more than I can bare." Plaintiff's progress notes show that he was seen the following day, on October 13, 2010, by Defendant Walkup. During his assessment by Defendant Walkup, Plaintiff reported that he had been kicked in the rib cage and felt a popping sensation there. Defendant Walkup assessed Plaintiff and diagnosed him with a rib contusion. According to Defendant Walkup, she found "no evidence of bruising or edema" in his rib area and noted that "he was able to take full inspirations and his lungs were clear to auscultation bilaterally." As a result, Defendant Walkup prescribed Plaintiff Tylenol twice a day for three days and instructed Plaintiff "to splint and deep breathe and to instruct nurses of any acute changes." In her affidavit, Defendant Walkup states that her "findings upon physical exam were inconsistent with a rib fracture."

Plaintiff submitted another medical request form at 6 a.m. on October 14, 2010, in which he stated: "I am receiving 2 Tylenol every 12 hours for my rib. This is not near enough. Please can I receive two more in between these times? I have no commissary money to buy any." In the "To Be Completed by Medical Staff" section, a non-party medical staff member wrote: "already addressed."

Plaintiff submitted another medical request form on October 14, 2010, in which he stated: "ATTN: EMERGENCY . . . My ribs are killing me. I'm telling you that you are not doing all you can. I'm not [illegible]. I'm in excruciating pain. My ribs keep popping it feels like a knife is being [illegible] . . . into my side. Please do something. It's more serious than you all are thinking." The "To Be Completed by Medical Staff" section indicates that Plaintiff's request was reviewed by Defendant Thomas on October 15, 2010, and that she noted "already addressed with ARNP on Wed 10/13/10."

Plaintiff then submitted another medical request form on October 15, 2010. On this request form he stated: "ATTN: EMERGENCY . . . I have repeatedly sent these med. Request in stating that my rib is broken. I can feel it moving in and out of place. I am being refused an x-ray or any kind of proper medical care. Please see that something is done. I'm suffering for the medical misdiagnosis." In the "To Be Completed by Medical Staff," a non-party medical staff member wrote: "Was going to see this I/M, pod was on lockdown already -10-15-10."

Plaintiff submitted another medical request form on October 16, 2010. This form stated: "I have filled out numerous med. request forms. My rib is broken. I feel it moving it is extremely painful, unbearable w/o some kind of meds. Please keep me on Tylenol. Someone needs to really rethink ignoring this medical issue." In the "To Be Completed by Medical Staff" section, a non-party medical staff member wrote: "Already addressed by ARNP."

4

Plaintiff submitted another medical request form on October 17, 2010. On this request form he stated: "What is wrong with you people? Do you not understood that my rib is broken. I am in extreme pain and I keep feeling it pop in and out. My God show some compassion. I need an x-ray and proper medical attention." The "To Be Completed by Medical Staff" section indicates that Plaintiff's request was reviewed by Defendant Thomas on October 18, 2010, and that she noted "already addressed 10/13/10."

Plaintiff also submitted a grievance to Defendant Thomas on October 17, 2010. This grievance stated: "Ms. Joanna, could I please speak with you. It is very important. I don't know how or why medical requests are falling on deaf hears. But I am in extreme pain and am being treated in a cruel manner. Please see me ASAP. Please." There is no record of any response to this grievance.

Plaintiff submitted another medical request form on October 18, 2010. On this request form, he stated: "As many med. request as I have filled out in the past week should raise a red flag that I am not joking. My rib is broken and I need med. attention." The "To Be Completed by Medical Staff" section indicates that Plaintiff's request was reviewed by Defendant Thomas on October 18, 2010, and that she noted "Already Addressed."

Plaintiff submitted another medical request form on October 20, 2010. On this request form, he stated: "If my ribs were only sore its been 11 days wouldn't the soreness be gone? Well, it's as bad today as it was the day it happened. Please give me some Tylenol or aspirin or IBU, anything." In the "To Be Completed by Medical Staff" section, Defendant Walkup wrote: "seen today." In Plaintiff's progress notes for that day, Defendant Walkup notes that Plaintiff showed no instability, bruising, or edema; that she still believed Plaintiff had a rib contusion; and

that she advised Plaintiff to continue "cough, deep breath, + splint" and that he may purchase "IBU or Tylenol from the commissary."

Plaintiff submitted another medical request form on October 21, 2010. On this request form, he stated: "The Nurse Practitioner told me I would be sore for up to 6 weeks. She only gave me Tylenol for 3 days. Could you please get me some more Tylenol or IBU or aspirin?" In the "To Be Completed by Medical Staff" section, a non-party medical staff member wrote on October 22, 2010: "I/M can buy IBU& ASA from commissary . . . Seen by ARNP on 10/20."

Plaintiff submitted another medical request form on October 22, 2010. On this request form, he stated: "My ribs are really hurting 'Extremely' bad please can I get some Tylenol?" In the "To Be Completed by Medical Staff" section, a non-party medical staff member wrote on October 22, 2010: "I/M to purchase Tylenol from commissary . . . Seen by ARNP on 10/20."

Plaintiff submitted another medical request form on October 23, 2010. On this request form, he stated: "Why am I being denied proper medical treatment  Because I have no money in my account. My rib is broken needs x-ray for [illegible] and I definitely need some pain meds. I have suffered for 8 days now because I am broke." In the "To Be Completed by Medical Staff" section, a non-party medical staff member wrote on October 23, 2010: "Addressed . . . seen by ARNP on 10/20."

Plaintiff submitted another medical request form on October 24, 2010. On this request form, he stated: "May I please be prescribed Tylenol, aspirin, IBU . . . I could see not getting those if I had money on my books. But I have no money. This is cruel and unusual punishment, malpractice." On this date, Plaintiff was prescribed "IBU 600 mg x 10 days" by a non-party medical staff member.

During this time, Plaintiff had contacted his former attorney from the Tennessee Public Defender's Office. His attorney wrote a letter to the U.S. Marshal's Service on October 26, 2010, stating that he believed Plaintiff had symptoms consistent with a broken rib and requested that Plaintiff be seen by a physician and x-rayed.

On October 27, 2010, Plaintiff received an x-ray, and the x-ray confirmed that Plaintiff had "nondisplaced fractures of the RIGHT ninth and tenth ribs." As a result of this diagnosis, it appears that Plaintiff continued to receive the Ibuprofen that he had been prescribed on October 24, 2010. Thereafter, Plaintiff completed multiple medical request forms while at WCJ, but none of them were related to his rib injury or a request for additional pain medication for such.

However, once Plaintiff was transferred to USP-McCreary, a federal penitentiary, he received another x-ray. This x-ray was taken on July 7, 2011, and showed "poorly healing right sided 9th and 10th rib." Plaintiff also submitted evidence showing that he continued to complain of rib pain on July 18, 2011, and July 29, 2011, while at USP-McCreary, and that he was prescribed Ibuprofen 600 mg to be taken for 180 days while there.[1] These documents also show that USP-McCreary provided Plaintiff a rib belt and a "low bunk permit" for six months "due to poor healing fractures."

Both Defendant Adams and Defendant Walkup submitted affidavits.[2] According to Defendant Adams' affidavit, he is a medical doctor licensed to practice in Kentucky and, from 2010-2011, he was an independent contractor working as medical director at WCJ on behalf of Southern Health Partners, Inc. During that time, he employed Defendant Walkup to examine

---

[1] In his complaint, Plaintiff originally alleged that Defendants were deliberately indifferent to his medical needs from October 10, 2010 until April 2011. However, in his response and sur-reply to Defendants' motion for summary judgment, and the documents attached as exhibits thereto, Plaintiff's arguments and evidence only reference the period of time from which he was first injured (October 11, 2010) to the time he was x-rayed (October 27, 2010). The documents from his time at USP-McCreary were submitted as a supplement to his complaint.

[2] Defendant Thomas did not submit an affidavit.

patients at WCJ. Defendant Adams testified that he was never asked to examine Plaintiff or contacted by Defendant Walkup or anyone else regarding Plaintiff's "alleged injury."

According to Defendant Walkup's affidavit, she is an advanced practice registered nurse (APRN) licensed to practice medicine independently within her scope of practice in Kentucky. From 2010-2011, she was employed by Defendant Adams to examine patients at WCJ. She further testified as follows:

> Treatment for non-displaced rib fractures is exactly the same as that which [Plaintiff] received after my first examination of him on October 13, 2010. Had [Plaintiff] received an x-ray earlier, it would not have changed his treatment in any way, shape, or form… After [Plaintiff]'s x-ray on October 27, 2010, I was never contacted by Plaintiff, or asked to see him again regarding complaints of rib pain, which is to be expected since hairline rib fractures simply have heal on their own and get better over time. . . It is appropriate and within the standard of care to treat patients with non-displaced rib fractures by encouraging deep breathing, splinting, and providing over-the-counter pain relief . . . . I never contacted or discussed my care of [Plaintiff] with Dr. Adams.

### B. LEGAL STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some

"metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## C. ANALYSIS

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Absent either element, a § 1983 claim will not lie. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

At the outset, the Court mentions that because Plaintiff was a pretrial detainee during the time he spent at the WCJ, the Eighth Amendment's proscription against cruel and unusual punishment does not apply to him. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). However, under the Fourteenth Amendment Due Process Clause, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Id.* at 685-86.

The Eighth Amendment protects prisoners from the "unnecessary and wanton infliction of pain." U.S. Const. amend. VIII. An Eighth Amendment claim requires a plaintiff to prove two distinct components - one objective and one subjective. First, the alleged deprivation must be, objectively, "sufficiently serious," *i.e.*, the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1970) (citations and internal quotation marks omitted). Second, the official must have been "deliberately indifferent" to the inmate's health or safety. *Id.*

### 1. Serious Medical Need

Under the Eighth Amendment test set forth in *Farmer*, the Court must consider whether, under the test's first component, Plaintiff's two fractured ribs constitute an objectively serious medical need. 511 U.S. at 834.

To satisfy the objective component of an Eighth Amendment deliberate indifference claim, Plaintiff must show the existence of a sufficiently serious medical need, meaning that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Farmer*, 511 U.S. at 834). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore v. Kalamazoo Cty*, 390 F.3d 890, 897 (6th Cir. 2004)).

Viewing the facts in the light most favorable to Plaintiff, the Court will assume without deciding, for purposes of Defendants' motion, that Plaintiff's two fractured ribs constituted a serious medical need. *See, e.g.*, *Grose v. Corr. Med. Servs.*, 400 F. App'x 986, 988 (6th Cir. 2010) ("It is undisputed that [Plaintiff]'s fractured knees constituted a sufficiently serious medical need."); *Hunter v. City of New York*, 35 F. Supp. 3d 310, 320 (E.D.N.Y. 2014) (holding

10

that pain resulting from a fractured rib rises to the level of a serious medical condition); *Griffin v. Donelli*, No. 05-CV-1072(TJM/DRH), 2009 U.S Dist. LEXIS 125271, at *22 (N.D.N.Y. Nov. 24, 2009 ) (holding that broken rib and head laceration constitute a serious medical condition).

## 2. Deliberate Indifference

Nonetheless, the Court concludes that Plaintiff cannot survive this motion for summary judgment because he has failed to establish that Defendants were deliberately indifferent to his serious medical need – the second component of the *Farmer* test. 511 U.S. at 834. The subjective component is met "where a plaintiff demonstrates that prison officials acted with 'deliberate indifference' to a serious medical need," which "is the equivalent of 'recklessly disregarding that risk.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Farmer*, 511 U.S. at 836). In other words, "[s]atisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)). In *Alspaugh v. McConnell*, the Sixth Circuit held as follows:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id*. However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id*.

643 F.3d 162, 169 (6th Cir. 2011).

Plaintiff's fundamental argument seems to be that Defendants' were deliberately indifferent to his serious medical need because they misdiagnosed his fractured ribs as rib contusions, ignored his repeated requests for additional medical attention, failed to order x-rays

11

until 16 days after he was injured, and that, as a result of these lapses, he did not receive sufficient pain medication for several days. These conditions, however, are not sufficient to establish deliberate indifference in the Sixth Circuit.[3]

In many ways, Plaintiff's experiences are similar to what happened to the plaintiff in *Grose*, except perhaps less egregious. 400 F. App'x 986. In that case, the plaintiff tripped and fell on both knees while descending from an upper bunk and immediately experienced pain and swelling in her knees. The plaintiff was immediately seen by a physician's assistant, who diagnosed her with mild overuse syndrome, and prescribed an anti-inflammatory for the plaintiff but did not order any x-rays. *Id*. at 987. The plaintiff continued to complain to the physician's assistant of knee and ankle pain over the next few weeks, and the physician's assistant continued to diagnose her with overuse syndrome, but did not prescribe her any pain medication. *Id*. Approximately one month after she was first injured, a nurse practitioner ordered knee x-rays for plaintiff. *Id*. The x-rays revealed that both of her knees had been fractured and she was immediately placed in a wheel-chair. *Id*. One month later, she was seen by an orthopedic surgeon who informed her that because of the initial delay in treatment, her knee fractures would result in "post-traumatic arthritis and deformity and lack of function." *Id*. The plaintiff ultimately had five knee surgeries (including replacements) and continued to "suffer pain and functional limitations." *Id*. The *Grose* court held that the misdiagnoses and the failure to order x-rays were claims of medical malpractice which were not actionable under the Eighth Amendment. *Id*. at 988. The court further held that there was no proof of subjective disregard of the plaintiff's injuries by the physician's assistant because there was no proof that the physician's assistant "perceived [the plaintiff]'s ailment as anything other than overuse syndrome." *Id*.

---

[3] The Court notes that Plaintiff cited several cases related to pain, delay in receiving proper treatment, and deliberate indifference, but none of these were decided by the Sixth Circuit.

Likewise, the evidence in this case fails to establish that any of the Defendants perceived Plaintiff's injury as anything more than rib contusions. Indeed, the evidence shows that Defendant Walkup thoroughly examined Plaintiff on two occasions within the 16-day period that Plaintiff complains of and that, based on her examinations, she concluded that Plaintiff's rib injuries were not fractures but contusions. *See also Clark v. Corr. Corp. of Am.*, 98 F. App'x 413, 416 (6th Cir. 2004) (finding no deliberate indifference where delay in treatment of jaw unknown to be broken for several weeks resulted in nerve damage that could only be corrected by surgery).

The facts of this case also parallel with the facts in *Loukas v. Gundy*. 70 F. App'x 245 (6th Cir. 2003). In *Loukas*, the plaintiff twisted his ankle while getting out of bed. *Id*. at 246. Despite placing a health request on that day, he was not seen until eleven days later, during which time he was told that he was not there to be seen for his ankle but to discuss the results of a blood test. *Id*. He was told to make another appointment regarding his ankle. *Id*. The plaintiff's ankle was ultimately x-rayed 18 days after he was first injured. *Id*. Five days after that he was informed that he had broken a bone in his foot and was provided with crutches and pain medication. *Id*. In his lawsuit, Plaintiff claimed that he should not have had to suffer walking on a broken foot for twenty-four days without crutches or pain medication. *Id*. The Sixth Circuit held that the plaintiff had not established a constitutional violation. The court noted that there was no evidence that the plaintiff had suffered a "serious break that required a case or other procedure to rest the bone" and that the "only treatment provided for his injury after he was properly diagnosed was pain medication and crutches to make him more comfortable while the bone healed." *Id*. at 247. Similarly, here, Plaintiff has presented no evidence that his treatment changed once was he was properly diagnosed with rib fractures instead of rib contusions. The

*Loukas* court also concluded that "[t]he fact that [the plaintiff] suffered some discomfort before he received pain medication is not sufficient to state an Eighth Amendment claim." *Id*. In *Loukas*, the plaintiff had suffered with a fractured bone for 23 days before he received any pain medication. Here, the evidence shows that Plaintiff was evaluated on four occasions within 13 days of his initial rib injury; was prescribed pain medication on three of those four occasions, and only suffered without pain medication for 10 days.[4]

Plaintiff also argues that Defendants violated his rights by failing to follow their own policies for medical services. He specifically points to Defendants' Patient Assessment and Treatment Guidelines which state that a patient should be referred to a physician if any of the following signs and symptoms are present: ". . . 2. Pain from the injured area prevents use of the limb, 3. The injured area is visibly swollen, 4. The injured area is black and blue." Plaintiff also points to Defendants' Patient Assessment and Treatment Guidelines which instruct nurses to "order x-rays if a fracture is suspected." Courts, however, have regularly held that a failure to abide by prison policies does not in and of itself state a constitutional claim. *See, e.g.*, *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."); *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (holding that a violation of policy, standing alone, does not amount to a constitutional violation); *Corhn v. Cnty of Bay*, No. 12-cv-13059, 2014 U.S. Dist. LEXIS 132432, at *6-7 (E.D. Mich. Sept. 22, 2014) (holding that any purported failure to follow a jail's policies concerning sending inmates to the

---

[4] Plaintiff asserts that the record shows that he suffered without pain medication for 14 days from the date he was injured to the date he was x-rayed. Defendants seem to assert that Plaintiff only went without pain medication for seven days. At least part of this inconsistency is due to either conflicting or incongruous records. For example, Defendants assert that the Medication Administration Record shows that Plaintiff received Tylenol for five days instead of three days. However, the physician's log and Plaintiff's progress notes show that he was prescribed Tylenol for three days. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that he went without pain medication for ten days total (nine of which were consecutive) in the 16 days between the date he fractured his ribs (October 11, 2010) and the date he was x-rayed (October 27, 2010).

emergency room does not amount to deliberate indifference to serious medical needs); *Gray v. Lay*, No. 5:13CV00042-DPM-JJV, 2014 U.S. Dist. LEXIS 61815, at *13 (E.D. Ark. April 7, 2014) (holding that "while a violation of an inmate's constitutional rights is sometimes accompanied by a simultaneous violation of prison policy, the two are not equivalent. Section 1983 is limited insofar as it authorizes a plaintiff to bring a claim for relief against a person who, acting under the color of state law, violated the claimant's federally protected rights. While the Court recognizes the importance of prison policies, claims that arise solely from a defendant's failure to follow such policies do not implicate federal rights.")

      Plaintiff also claims that Defendants violated his rights by advising him to buy over-the-counter pain medication from the commissary even though he had informed them that he had no funds in his inmate account. Several courts have recognized that although the government may charge prisoners for healthcare, it may not withhold care if a prisoner is unable to pay. *See, e.g.*, *Reynolds v. Wagner*, 128 F.3d 166 (3d Cir. 1997); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985); *Martin v. DeBruyn*, *880* F. Supp. 610, 615 (N.D. Ind. 1995) (holding that a prison official violates the Eighth Amendment by refusing to provide OTC medicine for a serious medical need if the inmate lacks sufficient resources to pay for the medicine.) Here, however, the Court finds that the facts do not establish a constitutional violation because Plaintiff's Inmate Account History shows that even though he had a negative balance during the short period of time he was advised to buy over-the-counter prescriptions from the commissary, he was still able to make commissary purchases.

      Based on the above, the Court concludes that Plaintiff has failed to present evidence which establishes that Defendants were deliberately indifferent to a serious medical need.

### D.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion to strike Plaintiff's sur-reply (DN 170) is **DENIED** and Defendants' renewed motion for summary judgment (DN 166) is **GRANTED**.

Date:  March 10, 2016

                                                **Joseph H. McKinley, Jr., Chief Judge**
                                                    **United States District Court**

cc: Plaintiff, *pro se*
    Counsel of Record
4414.011